THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X

JUAN DIAZ,

                Petitioner,

                    -against-

UNITED STATES OF AMERICA,

                Respondent.

--------------------------------------------------X

OPINION & ORDER
13-CV-828 (KMW)
90-CR-861 (KMW)

WOOD, U.S.D.J.:

On June 18, 1992, after an eleven-day jury trial, Petitioner Juan Diaz ("Petitioner") was convicted of, among other things, committing murder in aid of racketeering, in violation of 18 U.S.C § 1959, the Violent Crimes in Aid of Racketeering Act ("VCAR"). Petitioner, acting *pro se*, files the instant petition for habeas corpus pursuant to 28 U.S.C. § 2255 ("Section 2255"), asking the Court to set aside his conviction and vacate his sentence on the ground that he is innocent of violating the interstate commerce element of VCAR. For the reasons set forth below, Petitioner's habeas corpus petition is DENIED.

## I.     Background

On April 11, 1991, Petitioner was charged with (1) conspiring to distribute and to possess with the intent to distribute more than one kilogram of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); (2) committing murder in aid of racketeering activity, in violation of 18 U.S.C § 1959, the VCAR (Counts Two and Three); and (3) using and carrying a firearm during a crime of violence, in violation of 18 U.S.C § 924(c) (Counts Four and Five). (Gov't Mem. in Opp. 1 [Dkt. No. 8]). Petitioner's prosecution arose from an investigation into a heroin drug trafficking organization known as the "Rivera Heroin Organization," or the "RHO," headed by George Rivera. (*Id.* at 3). In

1

the summer of 1988, Petitioner was hired by Rivera as a full-time enforcer.  (PSR ¶ 78, Gov't Mem.
in Opp. Ex. B).  His job was to intimidate employees of the RHO and to commit murders on behalf
of the RHO.  (*Id.*).  As part of his job, he murdered Todd Crawford and Yvette Padilla at Rivera's
request.  (*Id.* ¶¶ 79–80, 81–82).

    A.  *Jury Trial*

    During the trial, former members of the RHO testified against Petitioner.  Ward Johnson
and Luis Gautier testified that Rivera had hired Petitioner to be an enforcer to protect the RHO.
*See, e.g.*, (Tr. 153:8–154:5, 200:3–201:4, 490:16–491:14, Gov't Mem. in Opp. Ex. A).  Gautier further
testified that Petitioner was paid $1000 a week for his services, (Tr. 491:8–14), and that he had
murdered Tom Crawford for $200 to $300 and some cocaine, (Tr. 532:5–18, 533:11–13, 535:2–6).
Matthew Williams testified that Petitioner murdered Yvette Padilla by shooting her two to three
times.  (Tr. 809:23–817:23).

    Former members of the RHO also described how the narcotics conspiracy affected
interstate commerce.  Johnson, when asked, "Where, from whom were you getting the bulk heroin
by that point in time?" (Tr. 97:2–3) replied that, "It was Chinese," (Tr. 97:4); *see also* (Tr. 265:7–14,
266:3–20, 269:16–18).  Gautier also testified that "[t]he Chinese" were the organization's main
suppliers of heroin.  (Tr. 466:11–13).  During the trial, the heroin purchased by the RHO was
referred to as "China white."  (Tr. 97:18–20, 111:20–23).  In addition, Johnson testified that Rivera
planned to "send somebody to . . . Puerto Rico" to reimburse "the Chinese" for the money that he
had lost.  (Tr. 111:1–12).  The Government also played a taped conversation in which a Chinese
supplier asked Rivera, "Is there something out there right now?" (Tr. 269:15–21) to which Rivera
replied, "I am going up there."  (Tr. 269:23–24).  Johnson testified that "up there" meant Puerto
Rico.  (Tr. 270:1–2).

In its instructions to the jury, the Court explained the interstate element of the VCAR as follows:

> The government must . . . prove beyond a reasonable doubt that either the criminal enterprise itself or the racketeering activities of those associated with it had some effect upon interstate or foreign commerce. This effect on interstate commerce could have occurred in any way, and it need only have been minimal. **If you find, for example, that drug trafficking was part of the business of the enterprise, that would be sufficient to establish an effect on interstate or foreign commerce, since drugs, such as heroin, are manufactured outside the United States and are imported and distributed in interstate and foreign commerce.**
>
> I instruct you that it is not necessary to find that defendant knew that his acts would affect interstate commerce or that they had the purpose of affecting interstate commerce. Nor is it necessary that the government show any particular degree of effect on interstate commerce. All that is necessary is that the activities of the enterprise affect interstate or foreign commerce in some minimal way.

(Tr. 1229:14–1230:1–8 (emphasis added)). After the instruction was given, defense counsel objected, arguing that the Court had "introduce[d] a fact which is not in evidence at this trial, that such drugs are manufactured outside the United States and imported and distributed in interstate and foreign commerce." (Tr. 1241:10–14). The Court noted that, because the government had proposed this language before the start of the trial and defense counsel did not object to the language at that time or during the charge conference, defense counsel's objection was late. (Tr. 1241:16–17, 19–24). On June 18, 1992, the jury found Petitioner guilty of all counts. (Tr. 1272:25–1273:14).

B. *Sentencing*

On January 22, 1993, Petitioner was sentenced to three concurrent terms of life imprisonment on Counts One through Three, to be followed by a consecutive five-year term on Count Four, and a consecutive twenty-year term on Count Five. (Judgment 2, Gov't Mem. in Opp.

3

Ex. D).[1]  Petitioner also received five years of supervised release on each count, to run concurrently with each other.  (*Id.* at 3).

C.  *Direct Appeal*

On February 4, 1993, Petitioner filed a notice of appeal of his conviction.  On appeal, Petitioner argued that (1) the Court abused its discretion by failing to determine whether a juror's unsupervised absence from the jury room at the start of deliberations was prejudicial; and (2) the Court committed reversible error by condoning a non-judicial court officer's entry into the jury room to deliver a substantive instruction outside of the presence of Petitioner after the jury had been charged and ordered to the jury room to begin deliberation.  (Def. Br. 1, Gov't Mem. in Opp. Ex. C).  On May 12, 1993, the Second Circuit Court of Appeals rejected Petitioner's appeal and affirmed his conviction.  *United States v. Diaz*, 996 F.2d 301 (2d Cir. 1993).

D.  *Current Petition*

On February 4, 2013, Petitioner filed the instant petition for habeas corpus.  (Habeas Motion [Dkt. No. 1]).  Petitioner argues that the Court's jury instruction was unconstitutional because it presumed as a matter of law that drug trafficking affects interstate commerce, instead of requiring the jury to make that determination beyond a reasonable doubt.  (Pet. Mem. in Supp. 4–5 [Dkt. No. 1]).

A defendant is guilty of violating the VCAR if he receives "anything of pecuniary value from an enterprise engaged in racketeering activity" for the commission of certain violent acts.  18 U.S.C. § 1959(a).  The VCAR defines an enterprise as one that "is engaged in, or the activities of which affect, interstate or foreign commerce."  *Id.* § 1959(b)(2); *see also* (Pet. Mem. in Supp. 4).  At the time of Petitioner's trial, "the law of this circuit presumed that all drug trafficking activity had an effect on

---

[1] The Judgment states that Petitioner was sentenced to twenty-five years on Count Five; however, on March 9, 2000, the Judgment was amended to reflect twenty years for Count Five.

interstate commerce." *United States v. Needham*, 604 F.3d 673, 678 (2d Cir. 2010); *see also United States v. Miller*, 116 F.3d 641, 674 (2d Cir. 1997) ("[W]here . . . the RICO enterprise's business is narcotics trafficking, that enterprise must be viewed as substantially affecting interstate commerce . . . ."); (Pet. Mem. in Supp. 4).  Here, consistent with Circuit law at that time, the Court instructed the jury that:

> If you find, for example, that drug trafficking was part of the business of the enterprise, that would be sufficient to establish an effect on interstate or foreign commerce, since drugs, such as heroin, are manufactured outside the United States and are imported and distributed in interstate and foreign commerce.

(Tr. 1229:19–25, Gov't Mem. in Opp. Ex. A); *see also* (Pet. Mem. in Supp. 4–5).

Petitioner argues that after his trial and direct appeal the law changed, so that "[p]roof of drug trafficking is no longer regarded as automatically affecting interstate commerce; instead, even in drug cases, the jury must find such an effect as part of its verdict." *Needham*, 604 F.3d at 678; *see also* (Pet. Mem. in Supp. 4).  As support, Petitioner highlights the decisions in *United States v. Vasquez*, 267 F.3d 79 (2d Cir. 2001),[2] and *United States v. Parkes*, 497 F.3d 220 (2d Cir. 2007).  (Pet. Mem. in Supp. 4–5).

Petitioner argues that in *Vasquez*, the Second Circuit took issue with a VCAR jury instruction similar to his.  The jury instruction in *Vasquez* stated that "either heroin or cocaine trafficking necessarily involves foreign commerce, because the raw materials for these substances originate outside the United States." 267 F.3d at 88.  The Court found that this language "removed from the jury at least a portion of the jurisdictional element of the VCAR offenses; that is, the district court decided that heroin or cocaine trafficking necessarily affected interstate or foreign commerce," and that the instruction therefore might "not pass muster." *Id.* at 88–89.

---

[2] Petitioner discusses *Vasquez* on page five of his memorandum of law, but incorrectly cites to *Parkes* at the end of his discussion.  (Pet. Mem. in Supp. 5).

In *Parkes*, the Second Circuit held that an effect on interstate commerce is an element of a Hobbs Act violation, and that therefore it must be determined by the jury beyond a reasonable doubt.  497 F.3d at 226–30.  Petitioner argues that the holding in *Parkes* also applies to the VCAR, because the VCAR mirrors the Hobbs Act in requiring an effect on interstate commerce.  (Pet. Mem. in Supp. 4–5).

## II.   Discussion

The government argues that the Court is precluded from considering Petitioner's habeas petition because Petitioner's claims are both procedurally and time barred.  (Gov't Mem. in Opp. 8–20).  The Court agrees.

### A.   *The Petition is Procedurally Barred*

To preserve an objection to a jury instruction for collateral review, a petitioner must first (1) object to the instruction before the jury begins to deliberate, Fed. R. Crim. P. 30(d), and (2) raise the objection on direct appeal, *see Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992).  Failure to raise the objection on direct appeal bars collateral review unless the petitioner can show "cause for failing to raise the claim at the appropriate time and prejudice from the alleged error," *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993), or that "failure to consider the claim will result in miscarriage of justice, *i.e.*, the petitioner is actually innocent," *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).  Here, Petitioner did not raise any objection to the jury instruction on appeal.[3] Petitioner's claim is thus procedurally barred unless he can show cause and prejudice, or that he is actually innocent.

---

[3] The government argues that Petitioner also failed to raise his current objection to the jury instruction at the trial stage, because Petitioner contended only that the instruction had "introduced a 'new fact,' " and not that "an element was taken away from jury consideration."  (Gov't Mem. in Opp. 10).  Having found that Petitioner failed to raise his current objection on direct appeal, the Court does not reach this issue.

1.   <u>Cause and Prejudice</u>

Petitioner asserts that he has cause for not raising his current objection at trial or on direct appeal because following his conviction and direct appeal, *Vasquez* and *Parkes* changed the law to require that the jury find beyond a reasonable doubt that an enterprise's drug trafficking activity affected interstate commerce.  (Pet. Mem. in Supp. 3–5).[4]  The Court does not reach this issue because, as explained below, Petitioner cannot demonstrate prejudice as a result of the challenged jury instruction.  *Cf.  McCleskey v. Zant*, 499 U.S. 467, 502 (1991) (holding, in the context of a state prisoner's habeas petition, that because petitioner lacked cause for the procedural default, the court need not consider prejudice); *Jacquin v. Stenzil*, 886 F.2d 506, 509 (2d Cir. 1989) (same).

To establish prejudice, a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982). Petitioner has failed to demonstrate that the jury instruction here was so prejudicial as to meet this standard.

First, the Second Circuit has held that "a jury may assume that cocaine and heroin travel in interstate commerce because those drugs cannot be grown, processed, and sold entirely within the state of New York."  *United States v. Celaj*, 649 F.3d 162, 168 (2d Cir. 2011); *see also Needham*, 604 F.3d at 680.  Here, as described above, there was considerable evidence that Petitioner was involved with the RHO and that the RHO trafficked heroin.  Therefore the jury could have assumed, based on its lay knowledge, that the RHO's heroin trafficking affected interstate commerce.

---

[4] Petitioner also cites *Rodriguez v. United States*, 10-CV-5259, 2011 WL 4406339 (S.D.N.Y. Sept. 22, 2011) (Duffy, J.), and *Hardy v. United States*, 11-CV-8382, 2012 WL 843384 (S.D.N.Y. Mar. 14, 2012) (Peck, Mag. J.), *report and recommendation adopted*, Order, 11-CV-8382 (S.D.N.Y. July 5, 2012) (Rakoff, J.) [Dkt. No. 15], as relevant intervening law; however, neither case is binding on this Court or relevant to the petition.

Second, the Second Circuit has held that *Parkes* affects only those convictions for which the court is "unable to identify evidence in the record satisfying the interstate element beyond a reasonable doubt." *Needham*, 604 F.3d at 675–76. To satisfy the interstate element of the VCAR, the government need only prove a minimal effect on interstate commerce. *See United States v. Feliciano*, 223 F.3d 102, 117–19 (2d Cir. 2000). The evidence in the record satisfies this de minimis standard. As described above, former members of the RHO testified as to the interstate nexus of the narcotics conspiracy. (Tr. 97:2–4, 111:1–12, 265:7–14, 266:3–20, 269:15–270:2 (Johnson)); (Tr. 466:11–13 (Gautier)).

Third, although the Second Circuit in *Vasquez* took issue with the district court's instruction on the interstate commerce element, the Court ultimately refused to reverse the defendant's conviction. The Court found that "[w]hen the jury charge is viewed in its entirety . . . the error is not so clear" because "the jury charge stated several times that it was for the jury to find whether the interstate/foreign commerce element had been proven by the government." 267 F.3d at 89. The jury charge here is similar to the one at issue in *Vasquez*—when viewed in its entirety, the jury charge sufficiently informed the jury that it was their duty to find whether the interstate element had been proven by the government. Directly before issuing the instruction challenged here, the Court informed the jury that "[t]he government must also prove beyond a reasonable doubt that either the criminal enterprise itself or the racketeering activities of those associated with it had some effect upon interstate or foreign commerce." (Tr. 1229:14–17). The Court further instructed the jury that:

> If you find that there was, in fact, a group of people characterized by
> (1) a common purpose or purposes, (2) an ongoing formal or informal
> organization or structure, and (3) core personnel who functioned as a
> continuing unit affecting interstate or foreign commerce during a
> substantial time period within the time frame alleged in the indictment,
> then you may find that an enterprise existed.

(Tr. 1230:9–15).

Thus, Petitioner has failed to show that the challenged jury instruction "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

2.  Actual Innocence

Alternatively, a court may excuse Petitioner's procedural default if he can present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). To satisfy this standard, the "claim of actual innocence must be both credible and compelling." *Id.* (internal quotation marks omitted). Petitioner has failed to meet this standard.

Petitioner claims that he is "[a]ctuall[y] [a]nd [f]actually [i]nnocent [o]f [v]iolating [i]nterstate [c]ommerce." (Habeas Motion ¶ 14.A). Petitioner does not provide any evidence supporting his claim, but states that he "had nothing to do with the distribution of drugs." (Pet. Mem. in Supp. 1). A conviction under the VCAR, however, requires only that a violent act was committed for pecuniary value from an enterprise engaged in racketeering. 18 U.S.C. § 1959(a). The statute does not require that the defendant participate in the distribution of drugs itself. Petitioner has therefore failed to show that he is actually innocent of violating the VCAR.

B.  *The Petition is Time Barred*

A federal prisoner seeking relief under 28 U.S.C. § 2255 must file his petition within one year of the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme

>Court and made retroactively applicable to cases on collateral review; or
>
>(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f) ("Section 2255(f)").  "[A] conviction becomes final when the Supreme Court 'affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.'"  *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003)).  The time to petition for a writ of certiorari is ninety days after the entry of judgment.  28 U.S.C. § 2101(c).  Section 2255(f)'s one-year limitation is a statute of limitations, and not a jurisdictional bar.  *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001).  The Court may therefore equitably toll the period, provided that the petitioner "show[s] that extraordinary circumstances prevented him from filing his petition on time," and that he "acted with reasonable diligence throughout the period he seeks to toll."  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).[5]  Here, Petitioner's conviction became final in August of 1993.  His habeas petition—filed almost two decades later on February 4, 2013—is therefore untimely, unless one of the other provisions of Section 2255(f) or equitable tolling applies.

Petitioner claims that the decision in *Hardy v. United States*, 11-CV-8382, 2012 WL 843384 (S.D.N.Y. Mar. 14, 2012) (Peck, Mag. J.), *report and recommendation adopted*, Order, 11-CV-8382 (S.D.N.Y. July 5, 2012) (Rakoff, J.) [Dkt. No. 15], is a "fact" within the meaning of Section 2555(f)(4), and because he filed his habeas petition less than a year after that decision was issued, his petition is timely.  As already stated above, *Hardy* is neither binding on this Court nor relevant to this case.  The Second Circuit's decisions in *Vasquez* and *Parkes* are binding and relevant to this case;

---

[5] In the context of a habeas petition from a state conviction, the Second Circuit has also recognized an "equitable exception" to the one-year limitations period, *Fischer*, 687 F.3d at 547 n.42, where a petitioner makes a "compelling showing of actual innocence," *id.* at 551.  As already discussed in II.A.3., Petitioner has failed to make such a showing.

however, *Vasquez* and *Parkes* were issued in 2001 and 2007, respectively, and because Petitioner did not file his habeas petition until 2013, he did not exercise due diligence.[6]

Petitioner also argues that the one-year limitation period should be equitably tolled because he "lacked a credible § 2255 claim prior to the decisions [in *Hardy*, *United States v. Lorenzana*, 380 F. App'x 13 (2d Cir. 2010), and *Parkes*]," and once he was aware of these decisions he "pursued his rights in this case diligently." (Pet. Mem. in Supp. 9). Petitioner emphasizes that "he is a layman of the law," and that he filed this petition as soon as he became aware that he could challenge his conviction. (*Id.* at 8). As stated above, however, *Hardy* is not controlling law. *Lorenzana* did not establish a new rule, but rather applied the rule established in *Parkes*. 380 F. App'x at 15. And although *Parkes* is controlling on this Court, it was issued in 2007, six years before Petitioner filed his habeas petition. "[P]ro se status does not in itself constitute an extraordinary circumstance meriting tolling." *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004). Because Petitioner does not provide any other explanation for failing to file his habeas petition until 2013, his petition is time barred.

---

[6] It is unclear whether *Hardy*, *Vasquez*, or *Parkes* could constitute a "fact" under Section 2255(f)(4) in any event. As support for his contention that such cases could constitute "facts," Petitioner cites *Johnson v. United States*, 544 U.S. 295 (2005). In *Johnson*, the Supreme Court held that a vacatur of a prisoner's prior state conviction constitutes a "fact" within the meaning of Section 2555(f)(4). *Id.* at 302. *Johnson* did not discuss whether *any* court decision issued after a petitioner's conviction qualifies as a new "fact." *See, e.g.*, *Gargano v. United States*, 12-CV-6503, 2014 WL 1725736, at *2 (S.D.N.Y. Apr. 30, 2014) (Keenan, J.) (rejecting habeas petitioner's attempt to use *Johnson* to support a claim that a new decision constituted a "fact" within the meaning of Section 2255(f)(4)). Subsequent to *Johnson*, many courts have held that court decisions in a petitioner's *own* case may constitute new facts within the meaning of Section 2255(f)(4) or its counterpart, Section 2244(d)(1)(D), but court decisions articulating new law in the abstract do not. *See, e.g.*, *United States v. Sawyer*, 552 F. App'x 230, 232 (4th Cir. 2014); *Shannon v. Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005); *Gargano*, 2014 WL 1725736, at *2; *Coleman v. United States*, 10-CV-1675, 2012 WL 569351, at *2 n.1 (D. Conn. Feb. 21, 2012); *Tellado v. United States*, 799 F. Supp. 2d 156, 163 (D. Conn. 2011), *aff'd*, 745 F.3d 48 (2d Cir. 2014); *see also Dixon v. Wachtendorf*, 13-3193, 2014 WL 3397678, at *2 n.4 (8th Cir. July 14, 2014) (stating that an abstract legal decision is generally not a "factual predicate" as described in Section 2244(d)(1)(D), but not definitively deciding the issue); *E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006) (same, but with respect to Section 2255); *Griffin v. Woods*, 08-CV-106, 2008 WL 4737572, at *2 (E.D.N.Y. Oct. 29, 2008) (holding that new substantive state case law could not serve as the beginning of the one-year period under any provision of Section 2241(d)(1)(D)).

**III.     Conclusion**

For the reasons stated above, Petitioner's habeas corpus petition is DENIED.  A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.


SO ORDERED.

DATED:      New York, New York
            September 10, 2014


                                        _____
                                                        /s/
                                              KIMBA M. WOOD
                                           United States District Judge